UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JESUS J. ORTIZ AND TRACY ORTIZ | CIVIL ACTION NO: 11-0055 |
| VERSUS | JUDGE DONALD E. WALTER |
| CHESAPEAKE OPERATING, INC. ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court are two Motions for Summary Judgment [Docs. #61 and 142], filed by the Defendant, Chesapeake Operating, Inc. ("Chesapeake"). Plaintiffs, Jesus Ortiz and Tracy Ortiz, oppose the motions. For the reasons assigned herein, Chesapeake's motions are hereby **GRANTED**. Plaintiffs' claims against Chesapeake are **DISMISSED WITH PREJUDICE**.

### BACKGROUND INFORMATION

This lawsuit involves the circumstances surrounding the severe injury of Jesus Ortiz on the evening of December 29, 2009, while he was working at the Davis 36 H1 Well operated by Chesapeake in DeSoto Parish, Louisiana. In its capacity as Operator, Chesapeake contracted with Bronco Oilfield Services, Inc. ("Bronco") to provide certain services, including personnel and equipment associated with flow-back and clean-up operations at the well site. Mr. Ortiz was hired by Bronco as a shop hand on June 1, 2009. During the scope of his employment with Bronco, Mr. Ortiz was assigned to work on the Davis 36 H1 Well. On December 29, 2009, Mr. Ortiz was severely injured after a blockage occurred in the flow-back system.

Plaintiffs allege that Chesapeake is not entitled to the protection of the exclusivity provision provided to statutory employers under the Louisiana Workers' Compensation Act because Chesapeake failed to have an effective Master Service Agreement in place at the time of the accident.

Chesapeake disagrees, arguing that valid agreement was in effect at the time of the accident.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Electrical*

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

*Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

The Louisiana Workers' Compensation Act reflects a compromise of sorts between workers and employers: the worker exchanges a right to full damages in favor of a guaranteed and expeditious claim for essentials while the employer has no defense to payment, even when it is not at fault. *Allen v. State of Louisiana*, 842 So.2d 373, 377 (La. 2003). In exchange for this obligation, employers receive immunity from suits in tort arising from accidental injuries sustained by their employees. La. R.S. 23:1032(A)(1)(a). [2] This is commonly referred to by employers as the

---

[2] Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages. La. R.S. 23:1032(A)(1)(a).

3

employee's "exclusive remedy".

Legislation has consistently reflected an ongoing concern that employers may attempt to use intermediaries, such as contractors and subcontractors, to circumvent their statutory obligations to provide workers' compensation coverage. *Allen*, 842 So.2d at 377. To remedy such attempts by employers to avoid paying benefits the Louisiana legislature has settled upon the concept of "statutory employer", which expands the scope of the employer's compensation obligation as well as its corresponding immunity. Section 23:1061 of the Workers' Compensation Act provides:

> Subject to the provisions of paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2)[3], undertakes to execute any work, which is part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employeed by him[.]...For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

When a contract recognizes the existence of a statutory employer relationship between a principal and a contractor which is the employee's immediate employer or his statutory employer, "there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees." La. R.S. 23:1601(A)(3). "This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or

---

[3] A "principal" is "any person who undertakes to execute any work which is part of his trade, business, or occupation, or which he had contracted to perform in contracts with any person for the execution of said work." La. R.S.23:1032(A)(2).

services." *Id.*

In this case Chesapeake presents a Master Service Agreement ("MSA") between itself and Bronco dated December 22, 2009, which provides in relevant part:

> 16. CONTRACTOR'S EMPLOYEES UNDER LOUISIANA WORKERS' COMPENSATION ACT
>
> In all cases where Contractor's employees (defined to include Contractor's direct, borrowed, special, or statutory employees) are covered by the Louisiana Workers' Compensation Act. La. R.S. 23:1021 *et seq* Company and Contractor agree that all work and operations performed by Contractor and its employees pursuant to the Agreement are an integral part of and are essential to the ability of Company to generate Company's goods, products and services for purposes of La. R.S. 23:1601 (A)(1). Furthermore, Company and Contractor agree that Company is the statutory employer of Contractor's employees for purposes of La. R.S. 23:1601(A)(3) [].

[Doc. #61-5, Ex. A at ¶ 16].[4] The provision clearly recognizes Chesapeake to be the statutory employer of Mr. Ortiz and any other Bronco employee. As such, assuming that the contract is valid, this provision creates a rebuttable presumption that a statutory employer relationship exists between the principal [Chesapeake] and the contractor's [Bronco's] employees. La. R.S. 23:1601(A)(3). This presumption may be rebutted only be a showing that the work being performed by the contractor is not an integral part of or essential to the ability of the principal to generate its goods, products, or services. *Id.*

Plaintiffs do not dispute that the flow-back services provided by Bronco to Chesapeake were an integral part of Chesapeake's drilling operations. Rather, Plaintiffs challenge the validity of the December 22, 2009, MSA. Plaintiffs argue that the MSA was not in effect at the time of the accident on December 29, 2009. Plaintiffs note that although Bronco's representative signed the MSA on

---

[4] Chesapeake Operating, Inc. is defined as "Company" and Bronco Oilfield Services, Inc. is defined as "Contractor". [Doc. #61-5, Ex. A].

December 22, 2009, Chesapeake's representative did not sign the MSA until March 30, 2010. Chesapeake counters that section 1.3 of the agreement clearly states "this agreement is effective as of the first date of service, whether prior to and after the date of execution of this Agreement, and supercedes all previous contracts." [Doc. #61-5, Ex. A at ¶ 1.3].

In Louisiana a contract is defined as "an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. The four elements required to form a valid contract are as follows: (1) the parties must possess the capacity to contract; (2) the parties must freely give their mutual consent; (3) there must be a certain object for contract; and (4) the contract must have a lawful purpose. La. Civ. Code arts. 1918, 1927, 1966, 1977; see *Keller v. Sisters of Charity*, 597 So.2d 1113, 1115.

A review of the December 22, 2009, MSA between Chesapeake and Bronco reveals that all four elements are met. The parties had the capacity to contract; their mutual consent was freely given; the object of the contract is certain; and the contract has a lawful purpose. Thus, the contract is valid. The fact that the Chesapeake representative did not sign the agreement until March 30, 2010 is simply irrelevant. However, even if the contract did suffer from a defect for lack of a signature this would merely be a relative nullity and the contract would remain enforceable until the nullity is invoked by the persons the contract was intended to protect (i.e. Chesapeake or Bronco, not the Plaintiffs). La. Civ. Code art. 2031.

Having found that the contract is valid, the court must interpret the MSA according to its clear and unambiguous terms. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. The agreement clearly states that the "agreement is effective as of the first date of

service, whether prior to and after the date of execution of this Agreement, and supersedes all previous contracts." [Doc. #61-5, Ex. A at ¶ 1.3]. Thus, the agreement was effective from the first day that Bronco was on site to provide its services to Chesapeake – some point in time prior to Mr. Ortiz's accident.

Plaintiffs have failed to present evidence to rebut the presumption that Bronco was providing a service essential to Chesapeake's ability to generate goods, products, or services. It appears undisputed that Bronco was on the Davis 36 H1 well-site specifically to perform flow-back and clean-up services directly related to Chesapeake's operation of the well.

Plaintiffs assert an additional challenge to the applicability of the MSA by arguing that Mr. Ortiz was actually an employee of RPC (Bronco's parent company) rather than Bronco and that RPC was not a party to the MSA with Chesapeake, thus preventing Chesapeake from claiming immunity under the exclusive remedy provision as a statutory employer. The court finds this argument unpersuasive. Mr. Ortiz's Internal Revenue Services forms W-9 and W-2 list Bronco as his employer. [Doc. #61-6]. RPC's status regarding Mr. Ortiz is a separate matter to be decided in due course.

Accordingly, the Court concludes that the MSA recognizing Chesapeake as statutory employer of Bronco's employees was in effect at the time of the accident and Plaintiffs have failed to rebut the presumption that Bronco was providing Chesapeake with services that were an integral part of Chesapeake's ability to operate that Davis 36 H1 Well. As a statutory employer Chesapeake is entitled to assert the exclusive remedy of the Workers' Compensation Act. Plaintiffs claims against Chesapeake must be dismissed.

## CONCLUSION

For the reasons stated herein, Chesapeake's motions for summary judgment [Docs. #61 and 142] are **GRANTED**, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED**, this 24 day of September, 2012.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE